Billy ALLEN et al., Appellants,

v.

ATLANTIC REALTY COMPANY,
Appellee.

No. 24356.

United States Court of Appeals
Fifth Circuit.

Oct. 23, 1967.

Rehearing Denied Nov. 30, 1967.

Michael J. Reily, Albert M. Horn, Adair, Goldthwaite, Stanford, Daniel & Horn, Atlanta, Ga., Charles Donahue (amicus curiae), Sol., Dept. of Labor,

528

Bessie Margolin (amicus curiae), Assoc. Sol., Dept. of Labor, Robert E. Nagle (amicus curiae), Atty., Dept. of Labor, Donald S. Shire, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellants.

Earle B. May, Jr., Jones, Bird & Howell, Trammell E. Vickery, Atlanta, Ga., for appellee.

Before TUTTLE, BELL and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from the dismissal by the trial court of a suit brought by the appellants under Section 16(b) of the Fair Labor Standards Act of 1938, as amended,[1] for unpaid minimum wages. The appellants are building service and maintenance employees of the realty company that owns the Hurt Building in the City of Atlanta and leases space to Southern Bell Telephone & Telegraph Company in Atlanta, Georgia, to house its headquarters and general offices. The trial court found that approximately 75% of the leaseable space of this building was utilized by Southern Bell and its "parent" company, American Telephone & Telegraph Company during the period in controversy. Another 7½% of the space was used by the Travelers Insurance Company, a nationwide insurer, and the remaining space used by miscellaneous tenants.

Since both appellants and appellee agree that the only issue in the case is one of coverage under the Fair Labor Standards Act, that is, whether appellants were engaged "in commerce" or the "production of goods for commerce," as those terms are defined by the law in the cases, we look to see what the latest pronouncement is by this court distinguishing between these concepts. In Wirtz v. B. B. Saxon & Co., 5 Cir., 365 F.2d 457, this court said:

"[i]t is apparent that the category of employees engaged in the production of goods for commerce is broader than the class of employees engaged in commerce, not only in the number of people who might be expected to be within it, but in the closeness of the relationship between the person and the activity requisite for inclusion. For one to be engaged in the production of goods for commerce within this Act, he need only be engaged in a closely related process or occupation directly essential to production, whereas to be in commerce, one must be in commerce itself. This distinction has been recognized by the courts. '[T]he test of whether one is in commerce is obviously more exacting than the test of whether his occupation is necessary to production for commerce.' Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118."

We can best describe the activities which the appellants claim require a finding that the appellants were "in commerce" or "in production of goods for commerce" by referring to findings 4 (a) and (b) by the trial court. These findings are as follows:

"(a) Disability checks for employees in eight other states were prepared in the Hurt Building and sent to vice-presidents in eight other states. Reports were likewise prepared and sent to other states, along with letters and films, and instructions. These articles were reproduced, TWX messages were sent interstate on tape. Billboards, posters, advertising cards, signs for trucks, inserts to be included in bills to customers, and promotion literature in telephone books were shipped in interstate commerce.

"(b) Almost without exception, all of the above literature was produced under contract by independent printers and mailed by such printers from their place of business. Said tenant did, however, prepare and mail from the Hurt Building at irregular intervals certain papers prepared by Xerox or other similar machines. At no time did said tenant prepare in the Hurt

1. 29 U.S.C.A. 201, et seq.

Building any form of literature, or anything else, or ship the same for any other purpose than to supply agents and employees of its own, and none of such things were prepared or shipped for profit. As to any matters which were multigraphed in the Hurt Building and shipped across state lines, same being spasmodic, no dates are given and the amounts are minuscule."

The record discloses without dispute that the Southern Bell Telephone Company general headquarters offices in the Hurt Building were creative offices, that is to say, they were executive offices, including operations, consisting of commercial, plant, traffic and engineering; marketing; accounting; public relations; legal; personnel; administrative or executive; revenue requirements and treasury. Persual of the record indicates that there is no doubt that each of the important departments of Southern Bell management in the Hurt Building is responsible for the creation of programs or "practices" or copy that is used to make up the various kinds of messages that go out either to the eight other state offices or go to the printers to be translated into physical billboards, posters, cards, signs, directories and the *Bell Telephone News.*

 It is indicated from the above quotation of the findings of fact in paragraph 4(b) that the trial court was preoccupied with the fact that the material prepared in the Hurt Building to be sent out was "to supply agents and employees of [Southern Bell's] own, and none of such things were prepared or shipped for profit. In light of this court's decision in Public Building Authority v. Goldberg, 5 Cir., 298 F.2d 367, these facts are irrelevelant. See also Beneficial Finance Co. of Wisconsin v. Wirtz, 346 F.2d 340 (C.A. 7).

 Also, the fact that, as stated in the findings by the trial court, a very substantial part of the work done by the management group in the Hurt Building was the creation or approval of ideas, plans, practices, suggestions, reports, statement of policies, etc., that were later sent to printers to be put into more bulky and final form does not prevent the activities being carried on in the creation and approval of the "paper" documents from being production, since the printer would have nothing to print if it were not for the text sent him or approved for him by the administrative officials of the company. We conclude, therefore, that the finding by the trial court that "Neither of the tenants referred to were engaged in the production of goods for commerce" cannot stand.

 In order for the appellants to have the coverage which they assert they need only show that they are "employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in *any closely related process or occupation directly essential to the production thereof * * *"* (Emphasis added.)

In the *Public Building Authority* case, supra, we held that where a building was occupied exclusively by a federal government bureau engaged in the timely issuance of social security benefit checks to claimants in ten Southeastern states, the activities of such employees were within the range of the definition of "production of goods for commerce," citing Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; Goldstein v. Dabanian, 3 Cir., 291 F.2d 208; Darr v. Mutual Life Ins. Co., 2 Cir., 169 F.2d 262, and Union National Bank of Little Rock, Ark. v. Durkin, 8 Cir., 207 F.2d 848. We then pointed out that the Supreme Court's decision in Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 57, could not stand for the proposition that, in the adoption of the 1949 amendments to the Fair Labor Standards Act, Congress meant to withdraw from coverage activities such as those we have discussed here. In answering a similar contention made by the owners of the

**530**

Public Building Authority of Birmingham, we said:

> "We think it is plain that the Zachry case did not mark a withdrawal from the court's previous views as expressed in Kirschbaum Co. v. Walling, 316 U.S. 517, 63 S.Ct. 1116, 86 L.Ed. 1638, that employees whose work was essential to the maintenance of the building devoted to the production of goods for commerce are covered employees."

> "The court distinguished its decision in 10 E. 40th St. Co. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, by showing that the building in the 10 E. 40th Street case 'was locally owned, held out for general tenancy, and in fact tenanted by a miscellany of tenants.' The court made much of the distinction between activities which are strictly local in nature and those being national in importance. It cannot be doubted, we think, that on the basis of this distinction, the employees performing services for these government occupied buildings in Birmingham fall clearly within the latter rather than the former category."

█ We must thus decide whether the Hurt Building, occupied more than 70% by a large interstate telephone company's head offices engaged regularly in conducting the wide affairs of the company throughout nine Southeastern states and initiating, approving, planning, reproducing for distribution, and ordering out substantial amounts of printed materials to be shipped on mailing lists which were furnished by this headquarters office falls properly within the class of cases represented by *Public Building Authority of Birmingham* rather than in the class of cases represented by 10 E. 40th St. Co. v. Callus, supra, because, "locally owned, held out for general tenancy, and in fact tenanted by a miscellany of tenants."

We have no doubt but that this building is of a kind that falls within the class of *Public Building Authority* rather than *10 E. 40th St.*

We, therefore, find it necessary to reverse the judgment of the trial court and remand the case for further proceedings not inconsistent with this opinion.

Reversed and remanded.