W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

A. S. GIOMETTI & ASSOCIATES, INC.,
et al., Appellees.

No. 25444.

United States Court of Appeals
Fifth Circuit.

Aug. 23, 1968.

Bessie Margolin, Associate Sol., Dept. of Labor, Robert E. Nagle, Donald S. Shire, Attys., Dept. of Labor, Charles Donahue, Solicitor of Labor, Beverley R. Worrell, Regional Attorney, Washington, D. C., for appellant.

Hoke Smith, Atlanta, Ga., for appellees; Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., of counsel.

Before JOHN R. BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The only issue presented in this appeal is whether draftsmen who make plats and maps of land boundary locations are engaged "in the production of goods for commerce," 29 U.S.C.A. § 206(a), so that their Employer [1] is required to comply with the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. More specifically, we must decide whether the plats and maps prepared by Employer's draftsmen are "goods" within the meaning of the Act. The District Judge held that they were not and dismissed the case. We disagree and reverse.

The facts were stipulated and may be severely capsulated. The Employer concedes that it does not at this time comply with the wage, overtime, or recordkeeping provisions of the Act. The Employer's business involves the preparation of maps and plats to aid attorneys, banks, businessmen, prospective land buyers, and lending institutions in ascertaining the exact boundary lines of property in the State of Georgia. Some of the employees are engaged in field work—doing

1. A. S. Giometti & Associates, Inc., a Georgia corporation maintaining an office and place of business in Atlanta and engaged in making surveys of residential, commercial, and industrial property.

the actual surveying—while others act as draftsmen, reducing the field notes and observations into a drawing, a visual representation of the boundary marks.

Interstate commerce is not really in question for the facts also show that almost all of the local lending institutions who procure these drawings which are produced by those working for the Employer and who make loans based on the lands involved later sell that security to mortgage investors outside the State of Georgia. Similarly, in about 90 percent of the residential surveys made, at least one copy of the drawings is sent outside the State of Georgia. Nor is the question of the importance of these actions in the work schedule of employees of any significance. The fact is that there is no dispute that preparing these drawings involves a substantial amount of the employees' time.

As a physical matter these papers on which the plats appear are "things." Likewise the paper is changed from an unrevealing blank piece of paper to one which is not only a "thing" but a thing on which something else has been added —perhaps two things, (a) the artistic-engineering concept of the scrivener-artist-draftsman, and (b) the lines, squares, angles, curves making up the drawing plus the physical ingredients of India ink or other mediums in which they are sketched. What is it then, which makes something less than "goods" out of physical material which in the operation is changed from a blank nothing into something significant?

This is what leads us to the Employer's contention so successfully pressed below. With conceptualistic ingenuity which perhaps rivals our own efforts to describe the Employer's work product, it contends, and the District Judge found, that these drawings and plats are nothing more than physical embodiments of professional conclusions concerning title, area, ownership, etc., and therefore do not come within the definition of "goods" contained in 29 U.S.C.A. § 203(i).[2]

As we view it, an Act meant to operate directly in the very practical matter of hourly, daily, and weekly pay of non-owner wage-earners cannot tolerate such metaphysical dialectic as the basis for its application. Getting it out of these heady heights, the decisions so far reject it.

Thus in the early days of FLSA the Court in Western Union Tel. Co. v. Lenroot, 1945, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414, held that telegraph messages from Morse's historic dots and dashes traveling imperceptibly at electrifying speeds which today would be considered a slumbering pace were "subjects of commerce" and thus constituted "goods" as defined in the Act. If a Court in those relatively unsophisticated days could conclude that "ideas, wishes, orders, and intelligence" were subjects of commerce, 323 U.S. at 502, 65 S.Ct. at 341, 89 L.Ed. at 423, we would be hard pressed to find a rational, definable distinction between such intangibles held to be within the Act and the tangible maps and plats produced and distributed by the Employer here.[3]

Our recent opinion in Allen v. Atlantic Realty Co., 5 Cir., 1967, 384 F.2d 527, is also highly relevant to the issue presented here. In that case this Court held that "ideas, plans, practices, suggestions, reports, statement of policies, etc. * * *" prepared by a management group and printed for distribution outside the State for the internal use of their own company constituted goods produced for commerce. See also Public Bldg. Authority

2. That section provides that: " 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, of articles or subjects of commerce of any character, or any part or ingredient thereof * * *."

3. See also Wirtz v. White, N.D.Okla., 1967, 272 F.Supp. 70, as close a case on the issue presented here, as a researcher could ever hope to uncover by hand or computer, in which the District Judge held that maps and plats produced by draftsmen were "Goods" within the meaning of the Act.

**740**

of City of Birmingham v. Goldberg, 5 Cir., 1962, 298 F.2d 367.

The idea that these line drawings with dimensions and boundary indicators are but the embodiment of a professional opinion is hardly an answer. The elaborate blueprints for a modern bridge or skyscraper are but the professional judgment of architects-engineers that the structure can be built to such specifications and if so it will serve its intended purpose. Likewise, in what an outsider can only guess as to its magnitude, the thousands of pages of specifications, blueprints, test and launching schedules frequently in the most esoteric erudition of the scientific world covering the launch of Apollo represent in the final analysis professional opinions of the most sophisticated kind. Yet surely such bulk, sent by interstate mail, from NASA at Houston to Red Stone to the Cape would constitute "goods." Cf. Mitchell v. Lublin, McGaughy & Assoc., 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243.

These conclusions are in line with the professional opinion of other courts who decline to impose any such constrictions on the Act.[4]

But the Employer presses upon us some of the language used by us in Sealy v. Mitchell, 5 Cir., 1957, 249 F.2d 327, 66 A.L.R.2d 1148, where this Court held that furnishing oil well "cuttings" to Humble Oil did not bring the driller within the provisions of the Act. The effort to drag in coverage through the cuttings was a non-record supported afterthought. Moreover, that decision must be read against the background of the

hopelessness of the wildcat oil venture as outlined in the *Sealy* opinion, the limited usefulness of the "cuttings," and the fact that the "cuttings" were an insignificant byproduct of an entire operation that was doomed.[5] The driller did nothing to the "cuttings" except furnish them to Humble Oil. The cuttings might indicate likely production. But there was no production or likelihood of it. At most the "cuttings" might be a source of information which Humble might think would be useful. Unlike *Sealy*, the situation here is quite different for the Employer gathered all the information which its patrons needed and ordered, then compiled and distributed it for a fee.

The case must therefore go back for action consistent with this opinion.

Reversed and remanded.

---

4. See, e. g., Willmark Service System, Inc. v. Wirtz, 8 Cir., 1963, 317 F.2d 486. The Court held that employees who investigated the performance of floor walkers and other sales personnel in large business establishments and filed written reports of their observations of the quality of service rendered and their opinion of the general performance of the employees being investigated constituted producing goods for commerce. The employees of this snooper-shopper service were thus held to be covered by the Act. Also, in Craig v. Far West Eng'r Co., 9

Cir., 1959, 265 F.2d 251, the Court held that the employees of an engineering firm who drafted plans and designs for aircraft were covered by the provisions of the Act.

5. Judges are wont at times to equate tenure with prescience to thus lead them to pontifical pronouncements having doubtful competence. Here nearly a decade proves that we were right about oil in Georgia. So far as we know the constitutional bounty of $200,000.00 is still up for grabs. 249 F.2d 327, at 329 n. 4.