**Will IRBY, Jasper Sewell, and Bennie Cohness, Plaintiffs,**

v.

**D. J. DAVIS d/b/a D. J. Davis Concrete Contractor, Defendant.**

**No. LR–69–C–138.**

United States District Court,
E. D. Arkansas, W. D.

April 9, 1970.

John T. Lavey, of Walker, Rotenberry, Kaplan, Lavey & Hollingsworth, Little Rock, Ark., for plaintiffs.

John P. Corn, Little Rock, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge (sitting by designation).

This is a private lawsuit filed by plaintiffs on August 7, 1969, whereby they seek recovery of unpaid overtime compensation, an additional equal amount as liquidated damages and a reasonable attorney's fee from defendant pursuant to the provisions of the Fair Labor Standards Act of 1938, as amended. 29 U.S.C. § 201 et seq. Plaintiffs also seek recovery of sums deducted by defendant from their wages for the payment of workmen's compensation insurance premiums.

The court has jurisdiction by virtue of 28 U.S.C. § 1337 and 29 U.S.C. § 216(b).

Plaintiffs alleged that during the period from August 8, 1967, to March 9, 1969, they were employed by defendant as cement finishers in an enterprise engaged in commerce for workweeks in excess of forty hours and that defendant failed to compensate plaintiffs for such overtime employment as required by 29 U.S.C. § 207(a) (1).

Defendant denied coverage of the Act and counterclaimed for sums of money allegedly advanced to plantiffs and not repaid.

The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a), Fed.R.Civ.P.

█ It was stipulated that defendant failed to pay each plaintiff time and one-half for any overtime work during the period in question. Defendant contended that his business is not an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s) (3). It does, however, seem quite clear that defendant falls within the 1966 amendments to § 203, which extended coverage of the Act to an enterprise engaged in the construction business which has employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, regardless of the enterprise's annual gross volume. During the period in question, defendant operated as the sole proprietor of a small enterprise in Little Rock, Arkansas, doing business as D. J. Davis, Concrete Contractor. The day-to-day operations of the business were broadly described by defendant as "concrete finishing" although that term is

somewhat misleading to the layman, because it implies that the business solely entails completing that which someone else has begun with regard to the concrete. On the contrary, the jobs undertaken by Davis often involve machine grading of land in preparation for the laying of concrete slabs, the construction and setting of wooden forms to enclose concrete while it is in a fluid state, which always involves the use of nails and often involves the use of steel wire mesh and steel bars as reinforcing materials and, finally, the actual pouring and finishing or smoothing of concrete. The great majority of the work done by Davis is undertaken on homes under construction by oral agreement with subdivision developers and from time to time includes the construction of concrete slabs for all purposes, including garages, patios, sidewalks, retaining walls, driveways and occasionally foundations.

It was stipulated that during the period in question each plaintiff used nails, steel wire mesh and steel reinforcing bars as part of their job duties, all of which were purchased by defendant from local suppliers who had previously purchased the materials directly from manufacturers and suppliers located in states other than Arkansas. Each plaintiff installed wire mesh on an average of two days per workweek, and used nails in building forms every working day. Defendant failed to keep records which would establish the approximate cost of these materials during the period in question, but it is clear that each item was used substantially and frequently by all of defendant's employees.

It is equally clear that these goods were manufactured for and moved in commerce, and the consequent obligation of defendant to pay overtime compensation cannot be avoided by the fact that his out-of-state purchases were made indirectly through local suppliers.

Title 29, C.F.R., § 779.242, provides in part:

"For the purpose of section 3(s) [29 U.S.C. § 203(s)], goods will be considered to 'have been moved * * * in commerce' when they have moved across State lines before they are handled, sold, or otherwise worked on by the employees. *It is immaterial in such a case that the goods may have 'come to rest' within the meaning of the term 'in commerce' as interpreted in other respects, before they are handled, sold, or otherwise worked on by the employees in the enterprise.* Such movement in commerce may take place before they have reached the enterprise, or within the enterprise, such as from a warehouse of the enterprise located in another State. *Thus, employees will be considered to be 'handling, selling, or otherwise working on goods that have been moved in * * * commerce' where they are engaged in the described activities on 'goods' that have been moved across State lines at any time in the course of business, such as from the manufacturer to the distributor,* or to the 'enterprise' or from one establishment to another within the 'enterprise.'" (Emphasis added.)

The courts have construed this language to mean that goods remain in interstate commerce throughout their journey from manufacturer to ultimate consumer. Wirtz v. Mayer Construction Co. (D.N.J. 1968), 291 F.Supp. 514; Wirtz v. Melos Construction Corp. (E.D.N.Y.1968), 284 F.Supp. 717.

█ The legislative history of the 1961 amendments to the Act unequivocally establishes Congressional intent that a concern need not make direct interstate purchases to fall within the coverage of the Act. The following excerpt from Senate Report No. 145, 87th Cong., 1st Sess., is found in U.S.Code Cong. and Admin.News (1961), at pp. 1633–1664:

"It will be noted that the application of the test relating to purchases and receipts of goods for resale, where such goods move or have moved across State lines, is not based on any interstate movement of such goods from the reselling establishment in its deliveries to customers. The interstate move-

ment referred to is, rather, that movement by which such goods have been made available for sales of the reselling establishment, *as where a retail enterprise located in one State purchases or receives goods for resale to its customers and these goods move or have moved in commerce from other States."* (Emphasis supplied.)

The use of a middleman-wholesaler is an established and commonplace fact of commercial endeavor and cannot overcome the power and intent of Congress to regulate activities which have a substantial effect on commerce. The continuing chain of movement from manufacturer to ultimate consumer of the materials used by defendant clearly falls within the meaning of Section 203(s) of the Act.

Nor can it be successfully contended that the materials in question are used by defendant as an "ultimate consumer," within the meaning of Section 203(i) of the Act. That section means that goods are in the hands of an "ultimate consumer" when they are in the hands of a consumer from whence they will move no farther. Powell v. United States Cartridge Co. (1950), 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017. The materials used by defendant obviously take steps after he receives them in that they "move" from defendant to a developer and then to a purchaser of the completed home who becomes the ultimate consumer. Nails, steel wire mesh and steel reinforcing bars are useless in and of themselves and until they become part of concrete slabs constructed by defend-

ant for consumption by home owners. See Wirtz v. Mayer Construction Co., and Wirtz v. Melos Construction Corp., both supra.

It also seems clear that the activities of defendant's employees in using these materials necessarily affect the work of other employees whose activities have a substantial effect on commerce, as the construction of a single-family home invariably involves multiple, closely related operations.

The defendant also claimed the so-called "small establishment" exemption from the overtime compensation provisions of the Act provided by 29 U.S.C. § 213(a) (2).[1] It is, however, doubtful that the retail concept is applicable to defendant's business, as the construction of concrete slabs by defendant is simply a part of the manufacturing process of residential homes. Even assuming, arguendo, that there are circumstances under which the services rendered by Davis might qualify as retail, there is absolutely no evidence that such services are recognized as retail in the construction industry. The recognition that construction of concrete slabs occupies in the industry cannot be determined solely on the basis of defendant's claim.

Since it has been established that the activities of plaintiffs in using and handling the materials in question brought them within the coverage of the Act, the burden is upon defendant to segregate such work from any work solely intrastate in character. Anderson v. Mt.

1. § 213(a) (2) provides:
"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—
\* \* \* \* \*
"(2) any employee employed by any retail or service establishment (except an establishment or employee engaged in laundering, cleaning, or repairing clothing or fabrics or an establishment engaged in the operation of a hospital, institution, or school described in section 203(s) (4) of this title), if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the

State in which the establishment is located, and such establishment is not in an enterprise described in section 203(s) of this title or such establishment has an annual dollar volume of sales which is less than $250,000 (exclusive of excise taxes at the retail level which are separately stated). A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry;"

582

Clemens Pottery Co. (1946), 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515; Mitchell v. Williams, 420 F.2d 67 (8 Cir. 1969); Wirtz v. First State Abstract and Insurance Co. (8 Cir. 1966), 362 F.2d 83. There is also strong authority for the proposition that if an employee's duties are partly interstate and partly intrastate, his entire compensation must conform to the provisions of the Act. Crook v. Bryant (4 Cir. 1959), 265 F.2d 541, 544. The basic remedial nature of the Act was given great emphasis two decades ago in Anderson v. Mt. Clemens Pottery Co., supra, where our Supreme Court stated in 328 U.S. 686, 66 S.Ct. 1192:

"An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof."

■■ The defendant here made no attempt to segregate the interstate work from the intrastate work or to keep any records of the time spent by plaintiffs in either type of work. It is perhaps true that defendant did not anticipate the need of accurate record-keeping, but the penalty for such an omission must fall upon the employer and not upon his employees. Anderson v. Mt. Clemens Pottery Co., supra, at 328 U.S. 687. There is not even a basis for a reasonable inference by the court as to the extent of plaintiffs' duties which were intrastate in character. Under such circumstances the entire pay of the employees must be in accordance with the Act. Wirtz v. First State Abstract and Insurance Co., supra, at 362 F.2d 89.

Defendant's business falls within the coverage of the Act by virtue of the 1966 amendments. Plaintiffs are, therefore, entitled to overtime compensation for any time worked in excess of forty-four hours in a workweek from August 8, 1967, to February 1, 1968; from February 1, 1968, to February 1, 1969, plaintiffs are entitled to overtime compensation for any time worked in excess of forty-two hours in a workweek; from February 1, 1969, to March 7, 1969, plaintiffs are entitled to overtime compensation for any time worked in excess of forty hours in a workweek.

■ Defendant must also reimburse each plaintiff for all sums deducted from wages to pay workmen's compensation insurance premiums. Defendant admits that weekly deductions were made for this purpose, but contends that such deductions were made by agreement with plaintiffs, and that, for the period in question, he employed less than five employees and was not required to carry workmen's compensation insurance. The court finds that from August 8, 1967, to March 7, 1969, defendant regularly employed five or more employees in his business and fell within the meaning of Ark.Stat.Ann. § 81–1302 (Repl.1960). Moreover, any agreement, express or implied, on the part of plaintiffs to pay all or a part of their workmen's compensation insurance premiums was void. Ark. Stat.Ann. § 81–1320(b) (Repl.1960) provides:

"No agreement by an employee to pay any portion of the premium paid by his employer to a carrier or to contribute to a benefit fund or department maintained by such employer for the purpose of providing compensation or

medical services and supplies as required by this act * * * shall be valid, and any employer who makes a deduction for such purposes from the pay of any employee entitled to the benefits of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than five hundred ($500.00) dollars."

Defendant withdrew his counterclaim against Sewell and has reduced his claims against Cohness and Irby. The only item asserted against Cohness is a loan represented by a check in the amount of $154.22, admittedly issued by defendant to satisfy an obligation of plaintiff. This debt has not been repaid by plaintiff and the court finds in favor of defendant on his counterclaim against Cohness. Defendant claims that the plaintiff Irby is indebted to him as the result of personal loans in the amount of $379.00, represented by checks issued by defendant to plaintiff during the period in question. Defendant also claims that Irby is indebted to him in the amount of $48.95 as a result of gasoline purchases charged to defendant without authorization which defendant nonetheless paid, and Irby concedes the existence and amount of that indebtedness. Defendant candidly admitted at trial that he does not know whether the personal loans made to Irby have been repaid. In view of the unfortunate state of defendant's business records and his personal recollection, the court can only find in his favor on his counterclaim against Irby in the amount of $48.95.

Finally, plaintiffs urged that defendant and Davis Concrete, Inc., which was chartered after plaintiffs left their employment with defendant, are jointly and severally liable for any judgment rendered herein. It is in fact clear that the corporation assumed the assets and liabilities of defendant's sole proprietorship. In addition, the corporation and its predecessor are identical as a practical matter, as concrete finishing and related activities continue as the business of the corporation, and defendant continues to conduct the corporation's overall operations. Under these circumstances, defendant cannot avoid the consequences of his errors by the simple expedient of creating another business structure. See Walling v. James V. Reuter, Inc. (1944), 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001; N. L. R. B. v. Tempest Shirt Manufacturing Co. (5 Cir. 1960), 285 F.2d 1; N. L. R. B. v. Ozark Hardwood Co. (8 Cir. 1960), 282 F.2d 1; Wirtz v. Ocala Gas Co. (5 Cir. 1964), 336 F.2d 236. The ultimate question is one of continuity, and it is undisputed that defendant's business is essentially unchanged as a result of incorporation.

The court would add that the peculiar facts giving rise to this action and the relationship of plaintiffs and defendant indicate that law and equity are here far apart, a problem that cannot be satisfactorily resolved within the provisions of the Act. It is undisputed that during the period in question each of the plaintiffs was being paid a substantially higher hourly rate than other cement finishers in the community, even assuming for the sake of argument that all other employers were in full compliance with the Act. Each plaintiff earned a creditable annual salary while in the employ of defendant and each has since suffered periods of unemployment. Defendant's difficulties are due in part to misplaced trust and in part to the careless manner in which he conducted his business affairs. It is indeed unfortunate that he must pay so high a price for his mistakes.

Defendant's records do not reveal the number of hours worked by plaintiffs in any week, but instead reflect the gross wages paid plaintiffs in each week during the period in question. The unpaid overtime compensation due each plaintiff was arrived at on a weekly basis by multiplying the number of hours that could legally be worked by plaintiffs by the hourly rate paid each plaintiff; the resulting standard figure was then subtracted from gross wages earned by each plaintiff in each week where the standard figure was exceeded; the difference

represents overtime compensation for that week, which was then divided by two, leaving *unpaid* overtime compensation due each plaintiff for that week.

The attorneys for the parties have agreed that in the event the court finds for the plaintiffs that they are entitled to recover the following amounts for unpaid overtime, liquidated damages and amount withheld from wages to pay premiums on workmen's compensation:

Will Irby—$1,884.19, less $48.95, or a total of $1,835.24 with interest from this date at six percent.

Jasper Sewell—$1,634.38, with interest from this date at six percent.

Bennie Cohness—$1,599.78, less $154.22, or a total of $1,445.56, with interest from this date at six percent.

In addition, the plaintiffs are entitled to jointly recover $500.00 as a reasonable attorney's fee.

A judgment in accordance with the above is being entered today against defendant D. J. Davis, which judgment shall be binding upon Davis Concrete, Inc., as successor to D. J. Davis Concrete Contractor.