**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**TRAVIS EDWARDS, INC., Defendant-Appellee.**

**No. 71-1297.**

United States Court of Appeals, Fifth Circuit.

July 10, 1972.

Rehearing and Rehearing En Banc Denied Aug. 17, 1972.

Certiorari Denied Dec. 18, 1972. See 93 S.Ct. 685.

---

Peter G. Nash, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., Beverly R. Worrell, Regional Sol., Edwin G. Salyers, Atty., U. S. Dept. of Labor, Atlanta, Ga., Bessie Margolin, Carin Ann Clauss, Mack A. Player, Atty., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., Harry R. Nelson, Shreveport, La., for defendant-appellee.

Before TUTTLE, INGRAHAM and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal involves the question whether the Fair Labor Standards Act applies to the operation of the Henry C. Beck Building, a 20-story office building located in Shreveport, Louisiana. The district court held that this office building operation was not an "enterprise engaged in commerce or the production of goods for commerce" within the meaning of the Act and, therefore, that defendant, Travis Edwards, Inc., the owner-operator of the building, could not be required to comply therewith. Finding that the defendant has employees covered by the Act, we reverse.

The Secretary of Labor brought this action under Section 17 of the Fair Labor Standards Act [1] to enjoin Travis Edwards, Inc. from violating the minimum wage, overtime, and record-keeping requirements of the Act, and from withholding unpaid wages which would be due certain employees if the office building were a covered enterprise. The case was submitted on a stipulation of facts. Defendant admits that it did not keep records nor pay all of its employees in accordance with the requirements of the Act, and thus the Secretary, upon a showing that the office building operation is subject to the Act, would be entitled to the relief he seeks.

The Secretary's claim of coverage is based on the Act's "enterprise" provisions, as contained in the amendments of 1961 (75 Stat. 65) and 1966 (80 Stat. 830). Prior to 1961 the Act covered only employees who were themselves engaged in commerce or in the production of goods for commerce. The 1961 amendments extended coverage to include any employee who is *employed in an enterprise engaged in commerce* or in the production of goods for commerce, whether or not the employee himself is so engaged.

Under the amendments a covered enterprise is one which has employees "engaged in commerce or in the production of goods for commerce * * * including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce." 29 U.S.C. § 203(s).[2] The issue before us, then, is whether the Beck Building has employees involved in commerce in the manner prescribed by the Act. We think it does.

■ On this appeal the Secretary grouped the Beck Building employees into five separate categories, to wit:

(1) Office employees; (2) building maintenance personnel (maids, porters, and boiler room employees); [3] (3) parking lot attendants; (4) concession stand employees; [4] and (5) a single maid/elevator operator. We are of the opinion that the office employees are "engaged in commerce or in the production of goods for commerce." It is, therefore, unnecessary for us to consider whether employees in the remaining four categories are so engaged since they become, by virtue of the office employees' engagement in commerce, employed in a covered enterprise and are entitled to the benefits of the Act.

We note the following facts. Defendant Travis Edwards, Inc., is a Louisiana corporation headquartered in Shreveport, the situs of the Henry C. Beck Building. Its president, Henry C. Beck, who is also a director and shareholder, resides in Dallas, Texas. Two other officers of the corporation, themselves directors and shareholders, likewise live out-of-state, one in Dallas and one in Atlanta, Georgia.

With respect to the office employees the stipulated facts reveal that these employees regularly and customarily performed various clerical and bookkeeping duties including the preparation and making of rent ledgers, bank deposits, accounts receivable and payable.

"These daily and weekly facts and figures are then assimilated into three reports, copies of which are mailed to Henry C. Beck, President, Travis Edwards, Inc., Dallas, Texas, each month.

"These reports included the following:

"(1) Building owners and managers association report. This mainly reflects the balance, the profit and loss statement, operating expense breakdown, a summary of the payroll, a schedule of receipts and expenses of parking lot.

---

1. 29 U.S.C. § 201 et seq.

2. An additional requirement is that the business have annual gross sales in excess of $500,000. 29 U.S.C. § 203(s) (1). Defendant admits that the Beck Building operation meets this requirement.

3. These employees regularly "handled" and/or used cleaning material, paper towels and light bulbs, etc.

4. This concession stand was operated by two employees until it was sold in 1970.

"(2) Receipts and disbursements which show receipts from each category such as rent, and parking lot and the amount of disbursements which include expenses and the payroll information. Prior to January 1, 1970, this report reflected the receipts and expenses of the concession stand.

"(3). A monthly rent analysis showing tenants that paid or failed to pay. A copy of the rent analysis is also forwarded to the following officers, directors and stockholders of defendant, Travis-Edwards, Inc.

(a) Mr. Wirt Davis, Dallas, Texas.

(b) Mr. Joe B. Hutchison, Atlanta, Georgia."

Our inquiry is directed to whether these employees are "engaged in commerce or in the production of goods for commerce." Though it is plain that coverage under the Act will not here be derived from what the Beck Building *tenants* do, the line of cases dealing with such derivative coverage[5] is nonetheless relevant as bearing on what is directly involved here, i. e., the meaning of the terms "engaged in commerce" and "engaged in the production of goods for commerce."

Of course, the pivotal question is whether there exists, in the regular administration of the Beck Building, an element of "commerce" sufficient to meet the statutory requirements. We think it plain that if there is "commerce" here, the office employees are "engaged" in it (by virtue of their regular interstate communications with executive personnel) and/or are producing "goods" for commerce. See Wirtz v. A. S. Giometti and Associates, Inc., 399 F.2d 738 (CA 5, 1968); PBA of Birmingham v. Goldberg, (supra).

"Commerce" is defined by Section 3(b) of the Act as "trade, commerce, transportation, *transmission, or communication* among the several States." (emphasis supplied). Taken literally the statutory definition clearly encompasses the various reports mailed to the out-of-state officers and directors and stockholders of Travis Edwards, Inc., since such reports are without question transmissions or communications among the states. However, defendant argues that the use of the mails here is incidental to the operation of a purely local business or in effect that such communications must involve some sort of business or profit-making activity in order for the Act to apply. While we do not perceive such a requirement in the statutory definition we would not in any event agree that what a corporation such as this one finds it worth paying its employees to do and which must consume a substantial portion of their time on the job is not a part of that business' profit-making activities.

Moreover, even upon the assumption that the statute may require something more than the mere mailing of a paper across state lines, nevertheless this court has expressly disavowed the notion that profit or a profit motive must attach to interstate communications in order to satisfy the commerce requirement of the Act. In PBA of Birmingham v. Goldberg, supra, the interstate communications consisted of Social Security checks mailed out to recipients in several states. This court noted that while it was difficult to grasp the concept that a government employee working on a Social Security claim was producing goods for commerce, "partially because commerce generally has a connotation of business or profit," nevertheless there need be *"no profit motive present to constitute commerce."* (emphasis supplied). 298 F.2d 367 at 370; see also Allen v. Atlantic Realty Co., supra.

The Supreme Court case of Ten E. 40th Street Company v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806 (1944), we think, throws no light upon the proper disposition of this case. The claim

---

5. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Public Building Authority of Birmingham v. Goldberg, 298 F.2d 367 (CA 5, 1962); Allen v. Atlantic Realty Co., 384 F.2d 527 (CA 5, 1967).

for coverage in that case was based upon the nature of the interstate business carried on by the *tenants* of the office building. The court indicated that it was a typical office building with a variety of tenants, the building being locally owned and locally operated, and there being shown no interstate transaction of any kind in the operation of the building. The distinction between that case and this is obvious; here the office employees of Travis Edwards regularly engage in interstate communication by means of the operating reports, the preparation of which requires a considerable amount of their time.

■ Rather, we think the situation here is more closely analogous to Allen v. Atlantic Realty Co., supra, in which this court found the necessary element of commerce in executive material prepared in Atlanta to be sent interstate to agents and employees of Southern Bell, a company that occupied a substantial part of the office building concerned. If anything, the case before us, insofar as the applicability of the Act is concerned, is even stronger than the Atlantic Realty case because in that case the coverage was based on the activities of a *tenant* of the building, whereas here the employees of the building corporation itself are engaged in interstate activities. Of course, the pure volume of interstate communications is irrelevant to our decision since there is no *de minimis* rule with respect to the application of the Act. Schultz v. Kip's Big Boy, 431 F.2d 530 (C.A. 5, 1970); see also Montalvo v. Tower Life Building, 426 F.2d 1135 (C. A. 5, 1970).

■ In sum, we note that the reports we are dealing with are of such a nature as are required to be sent to the president of the corporation and two out-of-state directors. Although the record does not disclose how many other directors there may be, indicating only that the local manager of the building was also an officer and director, it is common knowledge that a corporate president is ordinarily responsible to some degree for the success and management of the corporation. And, of course, the directors are responsible for the action of the president in the overall supervision and policy guidance of corporate affairs. We cannot assume, therefore, that the operating reports have no relation to business matters in a broad sense concerning the Beck Building. Though these documents may have no intrinsic value, and are for internal corporate use only, they are, in our view, nonetheless sufficient to meet the unexacting standards of the statutory definition of "commerce" (i. e., ". . . transmission or communication" among the states). In this conclusion we are supported by the case of Shultz v. Falk, 439 F.2d 340 (C. A. 4, 1971), cert. denied in which the Court of Appeals for the Fourth Circuit held under similar circumstances that the mailing of operating reports to out-of-state owners was at least one element in the case which satisfied the commerce requirement.

We conclude, therefore, that the office employees are "engaged in commerce or in the production of goods for commerce." It follows that Travis Edwards, Inc. is a covered "enterprise" and that all its employees, whether or not they themselves are involved in commerce, are covered by the wage and hour provisions of the Act.[6]

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

RONEY, Circuit Judge (dissenting):

I think the majority is wrong to hold that defendant's office employees are engaged in commerce and the production of goods for commerce, within the meaning of the Fair Labor Standards Act,

---

6. We note that the concession stand was leased to a third party in January, 1970, Thus, employees, if any, of this third party are not covered. However, the Beck Building employees who operated the concession stand prior to its being leased are entitled to recover unpaid back wages as provided in the Act.

solely by virtue of the fact that they prepare and mail operating reports of a purely local business to out-of-town directors and officers.

The Secretary argues that the reports which these employees mail across state lines are "goods" under § 3(s) of the Act, so that the office workers are engaged in the "production of goods for commerce." Alternatively, he asserts that the office employees are "engaged in commerce" under § 3(s).

In certain circumstances we have held that documents and written materials can be "goods" as the Act uses that term,[1] or that office workers who mail such materials can be "engaged in commerce."[2] But those cases cannot be used as authority for a decision in this case. In those cases, as in every other case cited to us by the Secretary[3] where such documents and reports were determined to provide the basis for § 3(s) coverage, the employer transacted some portion of its business in interstate commerce. The employees who were found to be covered performed "an essential and integral part of [the employer's] interstate business." Wirtz v. Wohl Shoe Co., 382 F.2d 848, 851 (5th Cir. 1967). In the case before us, since the employer's business activity has no direct connection with interstate commerce at all, it cannot be found that Travis Edwards' office employees perform duties which support or aid in any interstate business.

The holding of the Court converts an otherwise local business into an interstate business merely because its corporate directors and president live outside of the state. If they lived in the state, there is little doubt that the operation of the Beck Building would be held to be a local business.[4] The majority concedes that the coverage cannot here be derived from the interstate activities of the Beck Building tenants, and that this does not fall within the *Public Building Authority of Birmingham* and *Allen* line of cases. See notes 1 and 2 *supra*.

The very argument presented by the Secretary here was before the Third Circuit in the case of Stevens v. Welcome Wagon International, Inc., 390 F. 2d 75 (3rd Cir. 1968). The plaintiff in that case was a Pennsylvania resident who operated a Welcome Wagon service which was entirely local in its scope of operation. She was, however, required to submit daily, weekly, and monthly re-

---

1. Wirtz v. A. S. Giometti & Associates, Inc., 399 F.2d 738 (5th Cir. 1968); Public Bldg. Authority of Birmingham v. Goldberg, 298 F.2d 367 (5th Cir. 1962).

2. Montalvo v. Tower Life Bldg., 426 F.2d 1135 (5th Cir. 1970); Allen v. Atlantic Realty Co., 384 F.2d 527 (5th Cir. 1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1185, 19 L.Ed.2d 1294 (1968).

3. Wirtz v. Valco, Inc., 407 F.2d 1322 (5th Cir. 1969), aff'g 280 F.Supp. 449 (S.D. Tex.1968) (small loan company operated with funds supplied by out-of-state lender); Wirtz v. Wohl Shoe Co., 382 F.2d 848 (5th Cir. 1967) (employer operated retail shoe outlets in 42 states); Credit Serv., Inc. v. Fleming, 372 F.2d 143 (5th Cir. 1967) (11% of employer's business was with out-of-state customers); Beneficial Fin. Co. of Wisconsin v. Wirtz, 346 F.2d 340 (7th Cir. 1965) (employer was branch office of interstate consumer finance system); Wirtz v. Wardlaw, 339 F.2d 785 (4th Cir. 1964) (employees mailed cards and clippings to out-of-state business prospects, with aim of obtain-ing these prospects as customer); Wirtz v. C&P Shoe Corp., 336 F.2d 21 (5th Cir. 1964) (substantially all the shoes sold by employer came from out-of-state suppliers and manufacturers); Mitchell v. Kroger Co., 248 F.2d 935 (8th Cir. 1957) (employer operates interstate grocery chain); Union Nat'l Bank of Little Rock, Ark. v. Durkin, 207 F.2d 848 (8th Cir. 1953) (bank handled "large quantities" of stocks, bonds, checks, and commercial paper shipped to and from points out of state); Meeker Cooperative Light and Power Ass'n v. Phillips, 158 F.2d 698 (8th Cir. 1946) (electric cooperative provided power upon which interstate businesses depended).

4. 10 East 40th Street Bldg., Inc. v. Callus, 325 U.S. 578, 583, 65 S.Ct. 1227, 1229, 89 L.Ed. 1806 (1945) ("Renting office space in a building exclusively set aside for an unrestricted variety of office work spontaneously satisfies the common understanding of what is local business and makes the employees of such a building engaged in local business.").

ports to company offices in Tennessee and New York. The Court, in analyzing plaintiff's connection with "commerce," found it appropriate to quote the following language from Mitchell v. Welcome Wagon, Inc., 139 F.Supp. 674 (W.D. Tenn.1954), aff'd 232 F.2d 892 (6th Cir. 1956):

"The communications with Defendant's divisional offices, including the rare transmittal of the executory service contracts, are purely internal, and like the confidential daily reports sent to the subscribers, are incidental to the local services performed by the employee. The records, reports and the service contract have no value of their own. They are not Defendant's objective and Defendant does not sell them as goods. Their preparation and transmission incident to a business whose purpose does not comprise the production of goods at all, do not constitute engaging in the production of 'goods.'" 390 F.2d at 77, 78 [citations omitted].

The Court then concluded:

"We realize that the Fair Labor Standards Act is to be given a liberal interpretation in favor of finding coverage and that the issue of whether an employee is engaged in commerce should be decided by applying practical rather than technical standards, Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196 (1954), but it is self evident on the record before us that appellant's activities were local in nature regardless of her postal communications with appellee's New York City and Memphis offices. Nor can we accept appellant's contention that she was engaged in the production of goods for commerce. See, Mitchell v. Welcome Wagon, Inc., supra, 139 F.Supp. at page 679 and cases cited therein."

I think that the reasoning of the Third Circuit in *Stevens* applies with equal force to the situation presented here.[5]

Finding that no other employee group of defendant is engaged in commerce or in the production of goods for commerce within the meaning of the Act,[6] I would affirm the decision of the District Court.

---

5. Shultz v. Falk, 439 F.2d 340 (4th Cir. 1971), upon which the majority relies, is not in point here. There the reports were not mailed to owners of the business, but to third party customers of the business. Part of the purpose of the business was to engage in these interstate communications.

6. The employer is the consumer of the soap, wax, paper towels, light bulbs, and other repair and maintenance items manufactured outside of the state which are "handled" by the *maintenance employees*, thus making applicable the "ultimate consumer" exception contained in § 3(i) of the Act, and the cases of Shultz v. Wilson Bldg., Inc., 320 F.Supp. 664 (S.D. Tex.1970); Shultz v. Arnheim & Neely, Inc., 324 F.Supp. 987 (W.D.Pa.1969); cf. Mitchell v. Sherry Corine Corp., 264 F.2d 831 (4th Cir. 1959), and distinguishing this case from the facts of the following cases relied on by the Secretary: Shultz v. Falk, 439 F.2d 340 (4th Cir. 1970); Wirtz v. Melos Constr. Corp., 408 F.2d 626 (2nd Cir. 1969); Shultz v. Union Trust Bank of St. Petersburg, 297 F.Supp. 1274 (M.D.Fla.1969); Irby v. Davis, 311 F.Supp. 577 (E.D.Ark.1970); Wirtz v. Mayer Constr. Co., 291 F.Supp. 514 (D.N.J.1968).

The Secretary cites no cases to support the argument concerning the *parking lot attendants* and the contention that the automobiles are "goods" handled by these employees reaches far beyond any reasonable interpretation of the Statute.

As to the *employees of the concession stand*, they bear no such relationship to the defendant's building operation business as was found in Wirtz v. Savannah Bank & Trust Co., 362 F.2d 857 (5th Cir. 1966); Wirtz v. Columbian Mut. Life Ins. Co., 380 F.2d 903 (6th Cir. 1967); Wirtz v. First Nat'l Bank & Trust Co., 365 F.2d 641 (10th Cir. 1966). At best, the concession stand was a small convenience to the customers of the building and was not a related activity within the meaning of § 3(r). See 29 C.F.R. § 779.211.

The *maid-elevator operator* could not alone impart "enterprise" coverage of the business.

ON PETITION FOR REHEARING
AND PETITION FOR REHEAR-
ING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.