W. Willard **WIRTZ**, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

**WOHL SHOE COMPANY**, d/b/a Richardson Shoe Store, Appellee.

No. 24106.

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1967.

As Modified on Denial of Rehearing
Oct. 23, 1967.

Bessie Margolin, Associate Sol., Donald S. Shire, Atty., Dept. of Labor, Washington, D. C., Charles Donahue, Sol. of Labor, Robert E. Nagle, Attorney, United States Dept. of Labor, Washington, D. C., Major J. Parmenter, Regional Atty., for appellant.

William M. Howard, Gaylord C. Burke, Thomas C. Walsh, St. Louis, Mo., M. Harvey Weil, Corpus Christi, Tex., Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel, for appellee.

Before BELL, GODBOLD and DYER, Circuit Judges.

DYER, Circuit Judge:

This appeal is from a judgment of the District Court dismissing an action brought by the Secretary of Labor under § 17 of the Fair Labor Standards Act[1] to restrain appellee from violating the minimum wage, overtime and record keeping requirements, and from continuing to withhold wages due employees under the Act. We reverse.

The facts are not in dispute. Appellee is engaged in the retail sale of shoes, handbags, hosiery and sundries in over 350 leased department and family shoe stores located in 42 states and the District of Columbia. In addition, appellee is affiliated with approximately 40 corporations through either identical or majority stock ownership. These corporations operate approximately 214 family shoe stores and leased departments. In Texas appellee operates three stores in Corpus Christi, one in Victoria, one in Austin and one in El Paso. It also operates leased departments in eleven store locations in Texas.

Appellee maintains an office located on the second floor of one of its Corpus Christi stores where four persons are employed to perform clerical and administrative services for three stores in Corpus Christi and one store in Victoria, Texas. These four employees are the subject of this appeal.

Appellee does not engage in manufacturing. It purchases its stock at wholesale from the manufacturer for resale at its outlets. The goods are ordered and paid for by the appellee's home office in St. Louis. Most of these goods originate outside of Texas. When shipments of merchandise are delivered to the four stores in question the carrier's employees unload the goods and carry them inside. The sales personnel (not involved in this action) verify the shipments against the bills of lading, unpack the merchandise and place it on the shelves in the stockroom. Invoices from each of the stores are than sent to the Corpus Christi office, where the clerical employees prepare merchandise received reports and transmit them, together with the invoices or bills of lading, to the home office in St. Louis where appropriate adjustments of each store's inventory records are made.

Each of the four stores deposits its daily receipts in a local bank and sends the deposit slips, with its sales and receipt tickets and cash register tapes to the Corpus Christi office. The clerical employees use these items to prepare daily cash and charge summaries for each store which, together with the deposit slips, are sent to the home office. The employees in question also prepare semi-monthly reports showing the total volume of sales and the total sales of each type of merchandise and these also are mailed to the home office. This information is posted to a merchandise report which serves as a perpetual inventory of goods in stock.

One or more of the four clerical employees do all of the work concerning credit sales made at the four stores. From the daily sales tickets and records, credit sales

are posted to the customers' accounts and they are billed monthly. Any cash received on an account is posted to the customer's account.

The clerical employees also prepare their own payroll records and paychecks and, on the basis of weekly time records sent by the four stores to the office, prepare payment records and paychecks for the salesmen. The paychecks are drawn on an account at a Corpus Christi bank which has received deposits from the home office for this purpose. The original time sheets and payroll records are mailed weekly to St. Louis. In addition to the payroll, the employees at the Corpus Christi office pay postage and some c.o.d. bills, but all other bills received there are transmitted by them to the home office for payment.

The District Court found that these four employees were not engaged in commerce and, accordingly, were not within the coverage of the Act.

The limited question before us is whether, under the circumstances here presented, the four employees of the appellee are "engaged in commerce" as that term is defined in the Act.[2]

■ There is no dependable touchstone or acceptable standard for ascertaining whether an employee is engaged in commerce. The enforcement of the Act and its application to particular fact situations require the courts to utilize an empirical process of drawing lines from case to case, with the courts having "the independent responsibility of applying *ad hoc* the general terms of the statute to an infinite variety of complicated industrial situations." A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 523, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638.

■ Applying practical considerations rather than technical conceptions in determining the coverage of the Act, the crucial test is the nature of the activities of the employee, rather than the general character of the employer's business. Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed. 753; Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed. 2d 243; McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; A. B. Kirschbaum Co. v. Walling, supra. As we recently put it in Wirtz v. B. B. Saxon Co., 5 Cir. 1966, 365 F.2d 457, 461, "* * * one is engaged in commerce only if his activities are 'so closely related to such commerce as to be in practice and in legal contemplation a part of it.'" Thus an employer may be engaged in commerce although his employee may not be. McLeod v. Trelkeld, supra; Walling v. Jacksonville Paper Co., supra. Also, it is now settled that in enacting the FLSA Congress did not exercise the full scope of its authority to regulate the working conditions of employees whose activities merely affect commerce. Mitchell v. H. B. Zachry Co., supra; Mitchell v. Lublin, McGaughy & Associates, supra; McLeod v. Threlkeld, supra; A. B. Kirschbaum Co. v. Walling, supra.

■■ Appellee does not dispute that it is engaged in commerce, but points out that the goods came to the end of their interstate journey upon reaching the stockroom shelf in one of the four stores and that interstate commerce then ceased. Walling v. Jacksonville Paper Co., supra. The clerical work being performed thereafter, appellee argues that its employees are not engaged in commerce. But the problem is not so easily solved. Appellee's contention loses sight of the legal perspective that it is the employee's activity with which we must concern ourselves, the test being "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell v. Lublin,

2. 29 U.S.C.A. § 203 provides in pertinent part: "As used in this chapter—* * * '(b) "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.'"

McGaughy & Associates, supra, 358 U.S. at 212, 79 S.Ct. at 264. That the shoes are on the shelf is not enough. The critical inquiry remains: can the clerical work of these employees thereafter "be realistically compared to interstate activities which are merely incident to a local retail business," Mitchell v. Kroger Grocery, 8 Cir. 1957, 248 F.2d 935, 939, or are they "so closely related to the stream of commerce as to form a part of it." Donovan v. Shell Oil Co., 4 Cir. 1948, 168 F.2d 229, 231.

We are convinced that in the totality of the circumstances here shown the work of the appellee's employees in question constituted not an isolated, local activity but an essential and integral part of appellee's interstate business.[3] We dealt with a comparable situation in Wirtz v. C & P Shoe Corporation, 5 Cir. 1964, 336 F.2d 21. C & P Shoe and its subsidiaries owned and operated twenty retail stores, a warehouse and a central office in Florida. Most of the shoes sold by the chain were first received at the warehouse from out of state manufacturers and were thereafter distributed to the retail stores where they were sold. A Mrs. Brent worked in the central office and devoted her full time to preparing weekly reports of the bank deposits and sales and receipts reports for all of the Florida stores. She received sales and inventory data from the stores and prepared reports comparing the sales and inventory records with each store's bank deposits. These reports were sent to the employer's office in New York or to the accountant in Boston or both. For about one month Mrs. Brent also prepared a buyers' report to show what had been sold, what was on hand and what was needed in the different lines of shoes. All of the reports prepared by Mrs. Brent dealt with the disposition of the shoes after they had reached the retail stores. This court held that Mrs. Brent's "activities constituted an essential and integral part of the defendant's interstate activity, entitling this employer to the protection of the Act." 336 F.2d at 27.

Appellee insists that C & P Shoe is of little precedental value because of the physical differences, size, and dissimilarity of the activities of the respective companies. We think that the size of the operation (reports on four stores as compared to twenty) and the physical differences (central office instead of one on the second floor of a retail store) are comparisons without value in the determination of the Act's coverage. We emphasize again that the crucial criterion is the employees' sphere of activity. Appellee's employees performed the same general interstate duties as Mrs. Brent, but also performed duties more local in nature. However, their interstate duties are substantial enough in relation to their total activity that they are "engaged in commerce" within the meaning of the Act. Mitchell v. Sunshine Department Stores, Inc., 5 Cir. 1961, 292 F.2d 645.

Because the clerical duties performed by appellee's employees were not undertaken until after the goods had come to rest and interstate commerce had ended the district court found lack of coverage. As we have pointed out this is not decisive, but the district court, misreading C & P Shoe, was apparently persuaded that this fact controlled. Distinguishing C & P Shoe, the district court said that "the goods with which the employees [there] worked, or with which their work was directly related, were goods in interstate commerce and those movements in such commerce had not yet ended." This

---

3. We find no merit in appellee's claim that the four employees are not covered by the Act because sending reports to the home office was only one of their duties. "Plaintiff [appellant] has shown that the four employees worked on interstate as well as intrastate business; that the two classes of work were commingled in defendant's business opera- tions and that defendant did not attempt to distinguish between the two in the payment of wages. Under such circumstances plaintiff has made a prima facie showing that those employees are entitled to the protection of the Act." Wirtz v. First State Abstract & Ins. Co., 8 Cir. 1966, 362 F.2d 83, 89.

plainly is an incorrect statement of the evidentiary basis of *C & P Shoe*. The district court in that case found that Mrs. Brent's reports dealt "solely with the disposition of the shoes *after* they had reached the retail stores" and concluded that Mrs. Brent's employment was not in commerce.[4] We, of course, reversed. We find no material factual basis upon which to distinguish *C & P Shoe* from this case. We are convinced that the district court's finding that the appellee's four clerical employees were not engaged in commerce from November 24, 1962, to November 24, 1964, is clearly erroneous. We hold that during the period in question they were engaged in commerce within the meaning and terms of the Act. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

4. 15 WH Cases 862, 47 Labor Cases, ¶ 31,402.