Jerry **SHELTON**, Plaintiff,

v.

**M.P. ERVIN and Betty Ervin, d/b/a Ervin's Liquor Store, Defendants.**

**Civ. A. No. 82–153–ATH (WDO).**

United States District Court, M.D. Georgia, Athens Division.

Oct. 29, 1986.

Joseph C. Nelson, III, Athens, Ga., for plaintiff.

Eugene D. Butt, Madison, Ga., for defendants.

### ORDER

OWENS, Chief Judge.

Plaintiff Jerry Shelton commenced this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 216(b) (West 1986)[1], for unpaid overtime compensation claimed to be due and owing from the defendants pursuant to 29 U.S.C.A. § 207(a)(1) (West 1986).[2] A trial on this matter was held on August 13, 1984. This order comprises the court's findings of fact and conclusion of law.

**1.** This subsection provides in relevant part:

Any employer who violates the provisions of ... section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages....

**2.** This subsection provides:

Except as otherwise provided in this section, no employer shall employ any of his

### FINDINGS OF FACT

1. Defendants M.P. and Betty Ervin are, and have been at all times relevant to this action, sole joint proprietors of Ervin's Liquor Store in Rutledge, Georgia. (Material Undisputed Facts, Pretrial Order).

2. Defendants are also sole joint proprietors of another retail liquor store in nearby Madison, Georgia. (Trial Transcript at 2).

3. Plaintiff was employed by the defendants at the Rutledge store on a full-time basis from some date prior to January 1, 1980, until September of 1980, and again from March of 1981 until June 1, 1982. (Trial Transcript at 7–35).

4. Plaintiff is seeking unpaid overtime compensation for all hours worked in excess of forty hours per week during the above stated employment periods. (Material Undisputed Facts, Pretrial Order).

5. At least fifty percent of all retail sales at the Rutledge store were, at all times relevant to this action, to local Georgia residents. (Transcript at 63).

6. The Rutledge store is approximately four to five miles from Interstate 20. (Transcript at 135).

7. The Rutledge establishment is the nearest liquor store to a local Georgia State Park. Persons visiting the State Park conducted retail purchases from said store. (Transcript at 134–35).

8. The gross annual sales at the Rutledge store exceeded $275,000.00 for calendar year 1980. (Material Undisputed Facts, Pretrial Order).

9. The gross annual sales at the Rutledge store exceeded $325,000.00 for calendar

employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek *longer than forty hours* unless such employee receives compensation for his employment in excess of the hours above specified at a rate *not less than one and one-half times the regular rate at which he is employed.*
(emphasis added).

year 1981. (Material Undisputed Facts, Pretrial Order).

10. The gross annual sales at the Rutledge store did not exceeded $362,500.00 for calendar year 1982. However, when the Rutledge store's gross annual sales for 1982 is combined with the Madison store's gross annual sales for 1982 of approximately $100,000.00, the total gross sales for both stores exceeds $362,500.00. (Transcript at 3 and 117).

11. The duties of the plaintiff while in the employ of the defendants included the following:

a. The ordering of merchandise from wholesalers and paying for the goods by checks drawn on defendants' account.

b. The over-the-counter retail sales of alcoholic beverages, to include liquor.

c. Assisting in the periodic inventory of merchandise on hand in the store. (Transcript at 21, 43–46, 48).

12. Janice Channel, the defendants' daughter, kept up the accounting and tax records for both stores. Additionally, she assisted her mother, Betty Ervin, and others in conducting inventories in each of the stores. (Transcript at 48, 108–109).

13. The defendants transferred funds from the Madison store checking account to the Rutledge store account, to cover losses suffered by the latter store. (Transcript at 121).

14. During the period January 2, 1980, to April 30, 1980, the plaintiff was paid an hourly rate of $5.00 an hour. (Transcript at 39; Plaintiff's Exhibits "A" and "A1").

15. During the periods May 1, 1980, to September 3, 1980, and March 5, 1981, to July 30, 1981, the plaintiff was paid an hourly rate of $5.25 an hour. (Transcript

at 39 and 51; Plaintiff's Exhibits "A" and "A1").

16. During the period July 31, 1981, to June 1, 1982, the plaintiff was paid an hourly rate of $5.50 an hour. (Transcript at 39 and 51; Plaintiff's Exhibits "A" and "A1").

17. During the period January 2, 1980, to April 30, 1980, the plaintiff worked a total of 79.5 hours of overtime (hours worked in excess of forty hours during a work week). (Plaintiff's Exhibits "A" and "A1").

18. During the periods May 1, 1980, to September 3, 1980, and March 5, 1981, to July 30, 1981, the plaintiff worked a total of 827 hours of overtime. (Transcript at 41–43; Plaintiff's exhibits "A" and "A1").

19. During the period July 31, 1981, to June 1, 1982, the plaintiff worked a total of 1,516 hours of overtime. (Transcript at 43–45; Plaintiff's exhibits "A" and "A1").

20. Plaintiff was paid his normal rate per hour for the above overtime hours worked, rather than the one and one-half times the regular rate required by section 207(a)(1).

## CONCLUSIONS OF LAW

I. *Does the retail establishment exemption, 29 U.S.C.A. § 213(a)(2) (West 1986),[3] apply to bar plaintiff's claim for overtime compensation under the FLSA?*

If defendants' liquor business meets the requirements of section 213(a)(2) it is exempt from the overtime pay requirements of section 207.

The testimony at trial plainly showed that the defendants operated their Rutledge, Georgia liquor store as a "retail establishment" as that term is defined in section 213(a)(2). Further, the testimony showed that more than fifty percent of the

**3.** This subsection provides in relevant part:
(a) The provisions of ... section 207 of this title *shall not apply* with respect to—
\* \* \* \* \* \*
(2) any employee employed by any retail or service establishment ... if *more than 50 per centum* of such establishment's annual dollar volume of sales of goods or services is *made within the State in which the establishment is*

*located,* and such establishment is *not in an enterprise described in section 203(s)* of this title. A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sale of goods or services (or of both) is *not for resale* and is recognized as retail sales or services in the particular industry....
(emphasis added).

retail sales were to local Georgia customers. The remaining question is whether defendants' business is an "enterprise engaged in commerce" as defined in 29 U.S. C.A. § 203(s) (West 1978).[4] If it is not, the defendants' business is exempt.

"Commerce" is defined in 29 U.S.C.A. § 203(b) (West 1978) as "trade, commerce, transportation, transmission, or communication among the several states or between a state and any place outside thereof." Section 203(s) defines "enterprise engaged in commerce" as an enterprise which has "employees engaged in commerce ... or employees *handling, selling,* or otherwise working on goods or materials that *have been moved in* or *produced for commerce* by any person...." (emphasis added). Thus, the question becomes whether the plaintiff, as an employee, was "engaged in commerce" as defined above.

Determining this question involves a line drawing process. As pointed out in *Kirschbaum v. Walling*, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942), the Fair Labor Standards Act, on the question of whether employees are "engaged in commerce", "puts upon the courts the independent responsibility of applying ad hoc the general terms of the statute to an infinite variety of complicated ... situations." *Id.* at 523, 62 S.Ct. at 1120. The general test is whether the employee's activities are "so closely related to such commerce as to be in practice and in legal contemplation a part of it." *Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 850 (5th Cir.1967). Size of the operation or business is not relevant in determining the Act's coverage. *Id.* at 851.

The court is convinced that in the totality of the circumstances shown here, the work activities of the plaintiff while an employee in defendants' liquor store were such that he was engaged in interstate commerce. Both the plaintiff and defendant Betty Ervin testified that a substantial portion of plaintiff's duties involved the retail sale of liquor to customers. Mrs. Ervin herself testified that Interstate 20 was only four or five miles from the Rutledge store where plaintiff was employed. Mrs. Ervin also testified that this same store was the closest liquor store to a nearby State park. Interstate travelers frequent such parks. This is especially true when, as here, a Federal Interstate highway is nearby. The defendant stated that some of the Rutledge store's business was with people visiting the park. It can be reasonably inferred that a certain amount of the retail sales conducted by plaintiff were to customers in interstate travel.

Additionally, both the plaintiff and Mrs. Ervin testified that the plaintiff personally ordered and paid for with defendants' funds, much of the inventory of the store during both of the periods of his employment. The defendant Ervin also testified that plaintiff assisted in the periodic inventories taken of the stock in the store. It is common knowledge, especially concerning liquor, that much of the stock that a liquor store sells is manufactured in liquor producing states such as Kentucky and Tennessee. Indeed, some items such as Scotch, Cognac, Gin, and European wines are produced and imported from outside the United States. Section 203(s) plainly states that an "enterprise engaged in commerce" includes a business in which em-

---

**4.** This subsection provides in relevant part:

(s) *"Enterprise engaged in commerce* or in the production of goods for commerce" means an enterprise which has *employees engaged in commerce* or in the production of goods for commerce, or employees *handling, selling,* or otherwise working on goods or materials *that have been moved in or produced for commerce* by any person, and which—

\* \* \* \* \* \*

(2) is an enterprise which is comprised exclusively of *one or more* retail or service establishments, as defined in section 213(a)(2) of this title, *and* whose annual gross volume of sales made or business done is not less than $250,000.00 (exclusive of excise taxes at the retail level which are separately stated), beginning July 1, 1978, whose annual gross volume of sales made or business done is not less than $275,000 ..., beginning July 1, 1980, whose annual gross volume of sales made or business done is not less than $325,000 ..., and after December 31, 1981, whose annual gross volume of sales made or business done is not less than $362,500....

ployees are "handling, selling, ... goods that have been moved in ... commerce...." Therefore, the plaintiff was an employee engaged in commerce.

■ The final step in determining if defendants' business is an "enterprise engaged in commerce," involves the determination of whether both of defendants' liquor stores should be included in the term "enterprise."

The parties have stipulated that during calendar years 1980 and 1981 the gross volume of sales at the Rutledge store where plaintiff was employed exceeded $275,000.00 and $325,000.00 respectively. This meets the statutory minimum under section 203(s)(2) for the Rutledge store to be an enterprise engaged in commerce for those years.

The plaintiff has stipulated that the Rutledge, Georgia store's annual dollar volume of sales for calendar year 1982 was $338,-000.00. This is below the $362,500.00 minimum required by section 203(s)(2). However, defendant Ervin testified that the annual gross dollar volume of sales for 1982 at the Madison, Georgia liquor store was at least $100,000.00. Plaintiff argues that the Madison store's annual sales amount for 1982 should be added to that of the Rutledge store to meet the minimum required by section 203(s)(2). The defendants assert that the two businesses are separate and distinct "enterprises" and, therefore, the gross sales amounts cannot be combined.

The question of whether physically separate businesses should be considered as one "enterprise" was faced in the Fifth Circuit case of *Shultz v. Morris*, 315 F.Supp. 558 (M.D.Ala.1970), *affirmed*, 437 F.2d 896 (5th Cir.1971). The court stated that three factors are to be considered in determining whether two or more businesses should be considered as one "enterprise." These factors are (1) related activities; (2) common control or unified operation; and (3) common business purpose. *Id.* at 561. *See also Wirtz v. Savannah Bank & Trust Co.*, 362 F.2d 857, 859 (5th Cir.1966).

Since both stores were engaged solely in the retail sale of liquor they are undoubtedly related activities. Also, both stores were being operated by the defendants for purposes of making a profit. Profit motivation has been held to meet the requirement of common business purpose. *See Morris*, 315 F.Supp. at 562. This is especially true when the profits are not shared with entities unrelated to the actual business activity. Presumably the defendants, as sole proprietors of both stores, retain all profits for themselves.

The final factor is whether the two stores were under unified operation or common control. The test, as stated in *Shultz*, is "not the day-to-day control of the stores but whether there is a *common control center* with the ultimate power to make binding decisions for all units of the enterprise." *Id.* at 564 (emphasis in original). Common control can exist despite the existence of different personnel in each store who exercise discretionary judgment. " '[P]ower of actual control rather than exercise of that power is the only necessary requirement,' ... 'common control' [can be found] regardless of the extent to which those in 'control' might leave to others the normal operation of the separate business establishments." *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1301 (5th Cir.1969) (quoting *Lowell Wool By-Prod. Co. v. War Contracts Price Adjustment Bd.*, 192 F.2d 405, 408 (D.C.Cir. 1951)).

This court finds that the two liquor stores owned by the defendants in Rutledge and Madison, Georgia were under common control. The following facts provide evidence that there was a central "power of actual control" over the two stores: (1) the defendants were the sole owners of both stores; (2) Janice Channel, the defendants' daughter, was hired to keep up the accounting records for both stores; (3) all invoices for both stores were paid by checks drawn on checking accounts that belonged solely to the defendants; (4) the defendants supervised periodic inventories in both stores; and (5) the defendants commonly transferred funds between

checking accounts for both stores, when an account became low or depleted.

Indeed, this case is similar to the situation found in *Morris.* As exists in the case at bar, there was centralized bookkeeping and common ownership of the respective buildings. The dominant equity position of all the stores was in one entity. The court held, on these facts, that all the stores at issue were one "enterprise." 315 F.Supp. at 564.

Since defendants' business meets the requirements to be termed an "enterprise" under section 203(s), the section 213(a)(2) retail establishment exemption does not apply to bar plaintiff's claim.

II. *Does the "executive" exemption, 29 U.S.C.A. § 213(a)(1) (West 1986), apply to bar plaintiff's claim for overtime compensation under the FLSA?*

■ Section 213(a)(1) provides in relevant part:

(a) The provisions of ... section 207 of this title *shall not apply* with respect to (1) any employee employed in a bona fide *executive*, administrative, or professional capacity....

(emphasis added).

The defendants contend that the plaintiff comes within the prohibition of this section. In determining this question the court must keep in mind that exemptions from the Act's coverage are to be narrowly construed and applied to those situations "plainly and unmistakenly within its terms and spirit." *Hodgson v. Colonnades, Inc.,* 472 F.2d 42, 47 (5th Cir.1973).

An examination of the Code of Federal Regulations indicates that there are two ways that an employee can be in an "executive" or managerial status. *See* 29 C.F.R. § 541.1 (1986).[5]

The first instance is when the employee is compensated a "salary or fee basis" of not less than $250.00 per week, and (1) his primary duty consists of the management of the enterprise in which he is employed; and (2) he customarily and regularly directs the work of two or more employees. *Id.*

An employee can also be an "executive" if he is compensated on a "salary basis" of not less than $155.00, and: (1) meets the *same two requirements listed above;* (2) has the authority to hire or discharge employees; (3) customarily and regularly exercises discretionary powers; and (4) devotes 40 percent or more of his hours of work in a workweek directly and closely related to the performance of the duties listed above. *Id.*

An employee must meet all of the above conjunctive requirements to be an exempt

**5.** The section provides in relevant part:

The term "employee employed in a bona fide executive ... capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20–percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ..., exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week ..., exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

"executive" employee. Further, the burden of proof to show an exemption is on the employer. *Walling v. General Indus. Co.*, 330 U.S. 545, 547–48, 67 S.Ct. 883, 883–84, 91 L.Ed. 1088 (1947).

The first problem with defendants' contention is that the plaintiff was not paid a "salary" as that term is used in section 541.1. 29 C.F.R. § 541.118(a) (1986) defines "on a salary basis," in relevant part, as when the employee "regularly receives each pay period on a weekly, or less frequent basis, a *predetermined amount* constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or *quantity* of work performed." (emphasis added). The court, as stated above, has determined as a factual matter that the plaintiff was paid a sum certain for each hour worked. Therefore, the plaintiff was not paid "on a salary basis."

The plaintiff also fails to meet another requisite requirement for the "executive" exemption common to both of the above tests. The defendants brought forth no evidence that indicated that plaintiff *customarily and regularly* supervised two or more *full time* employees. *See* 29 C.F.R. § 541.105 (1986). The evidence showed that two teenagers worked in the Rutledge liquor store. However, there is no evidence of exactly when they were employed, whether they were part-time or full-time employees, or whether they were both employed at the same time. At most, the evidence indicates that plaintiff either worked alone or with only one other employee.

Accordingly, the plaintiff does not come within the "executive" exemption of section 213(a)(1).

III. *Does the two year statute of limitations, 29 U.S.C.A. § 255(a) (West 1985), bar plaintiff's claims for overtime compensation accrued prior to August 20, 1980?*

█ Section 255(a) provides in relevant part:

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended ... —

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within *two years* after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, *except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued*....

(emphasis added).

The plaintiff has brought action for overtime compensation due him for two periods of employment. The first is January, 1980, to September, 1980. The second period is for March, 1981, to June, 1982. The plaintiff filed his complaint on December 20, 1982. As can be seen from a reading of section 255(a), the plaintiff will be barred from recovering overtime compensation prior to December 20, 1980, unless the court finds that a "willful" violation of the FLSA by the defendants exists. Willfulness extends the normal two year statute of limitations to three years.

Recently, the Eleventh Circuit had occasion to restate the long standing rule for determining if a "willful" violation has occurred under section 255(a). In *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1039 (11th Cir.1985) the court stated:

[A] violation is willful if the employer knows or has reason to know that his or her conduct is governed by the Act. An employer need not proceed with knowledge that his or her actions are contrary to the Act in order for willfulness to be found. An action is "willful" if the employer knew that the Act was "in the picture" regardless of the defendant's good faith.

(citations omitted). *See also Marshall v. A & M Consol. Indep. School*, 605 F.2d 186, 190 (5th Cir.1979); *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir.1974); *Coleman v. Jiffy*

*June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1972).

Defendant Betty Ervin's own testimony indicates that she undoubtedly knew that the Fair Labor Standards Act was "in the picture" during the period of the plaintiff's employment. Under direct examination by her own counsel, Mrs. Ervin stated:

Q. Mrs. Ervin, had you ever at anytime in the past, prior to this employment period and while the Sheltons were working for you, ever discussed with anyone the requirements of wages for Mr. Shelton or anyone else in the management position?

A. Not Mr. Shelton but we had a State man, I guess it was a State man, that came down to the restaurant and was checking the permits for girls working and he sat down and drank a cup of coffee and I was asking him

\*     \*     \*     \*     \*     \*

A. He came around [the State man]—he told me all about the overtime and the employees, I don't know, he

\*     \*     \*     \*     \*     \*

Q. What understanding did you come—about when did this conversation take place?

A. Its been several years ago cause when I asked when overtime applied, he said $275,000 and that hourly employees were qualified but managers were not.

(Transcript at 128–130). These statements afford sufficient proof that the defendants had the knowledge necessary to establish a "willful" violation. Therefore, pursuant to section 255(a) the plaintiff is afforded a three year statute of limitations that encompasses both periods of his employment.

IV. *Does plaintiff's claim fail because he does not have direct evidence of the exact number of hours that he worked?*

It is uncontradicted that the number of hours that plaintiff asserts he worked overtime is an approximation based upon circumstantial evidence. Under the FLSA,[6] however, the burden is on the employer to keep a record of the hours worked by an employee subject to the Act. *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir.1982). Furthermore, an employer must decide at his peril which employees are covered by the Act. *Castillo v. Givens,* 704 F.2d 181, 194 (5th Cir.1983).

As stated in *Skipper v. Superior Dairies, Inc.,* 512 F.2d 409 (5th Cir.1975), when the employer fails to keep such records:

[t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate....

---

**6.** 29 U.S.C.A. § 211(c) (West 1986). This subsection provides in relevant part:

Every employer subject to any provision of this chapter or of any order issued under this chapter *shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment* maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

(emphasis added).

*Id.* at 419–21 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946)).

In the instant case, the plaintiff has met his burden of proof through his own and his brother David Shelton's testimony. The burden of proof then shifted to the defendants to prove the precise amount of work the plaintiff performed or to negate the reasonableness of the inferences to be drawn from plaintiff's evidence. The defendants have failed to do either.

V. *Should liquidated damages pursuant to 29 U.S.C.A. § 260 (West 1985) be awarded?*

■ Section 260 provides:

In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in *good faith* and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, *award no liquidated damages* or award any amount thereof not to exceed the amount specified in section 216 of this title.

(emphasis added).

An employer found to have violated the FLSA is normally liable for both unpaid compensation and "an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b) (West 1986). However, pursuant to section 260, the court in its sound discretion may refuse to award liquidated damages. *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985). In order to invoke the court's discretion under section 260, the employer has the burden of showing both that he acted in good faith and that he had reasonable grounds for believing that he did not violate the Act. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979).

The only evidence brought forward by the defendants on this issue is a conversation between Mrs. Ervin and a "State man" concerning the status of managers as pertaining to overtime compensation. Certainly, this is evidence of subjective good faith. It shows that the defendants facially tried to investigate the requirements of the Act.

Defendants, however, have not shown that *reasonable* grounds existed for believing that they were not violating the Act. Other than the subjective determination that the individual was a "State man," the defendants have not provided anything else that identifies the position this individual occupied. Defendants have not provided any evidence that this man was even authorized to make a determination concerning when the "executive" exemption applied. Further, the defendants' testimony indicates that Mrs. Ervin simply asked the state official what the law was in relation to management positions. There is no showing that she provided him with facts for *his* determination as to whether the "executive" exemption would apply. Her testimony shows that she made her own conclusion of whether she would have to pay overtime compensation or not.

The defendants have not shown that they had reasonable grounds for believing that they did not violate the Act. Accordingly, the court must award liquidated damages.

## CONCLUSION

1. The defendants are liable to the plaintiff for unpaid overtime compensation calculated as follows:

| Dates | OT Hours | |
|---|---|---|
| 1/2/80 – 4/30/80 | 79.5 × $2.50 | =$ 198.75 |
| 5/1/80 – 7/30/81 | 827 × $2.625 | =$2,170.88 |
| 7/31/81 – 6/1/82 | 1516 × $2.75 | =$4,169.00 |
| Totals | 2422.5 | $6,538.63 |

2. The defendants are also liable to the plaintiff for an amount equal to the unpaid overtime compensation as liquidated damages.

3. Further, 29 U.S.C.A. § 216(b) (West 1986) provides, "[t]he court in such action shall, in addition to any judgment awarded

to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Accordingly, plaintiff may file within thirty days a petition for attorney's fees and costs. Failure to do so will be deemed as abandonment of any such claim.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant pay to the plaintiff for unpaid overtime compensation and liquidated damages the amount of $13,077.26.